Jack Stanislaw, J.
Passenger Fronia Moore brought a negligence action against the defendant Sadie B. Leggette, owner and operator of the car in which she was riding which collided with another allegedly injuring her. Included in Leggette’s automobile liability insurance policy was an indorsement providing for payment of the medical expenses of persons injured while passengers in the car. Moore claimed such payment and, after releasing further claims under this indorsement, she was paid such expenses by the carrier. In this action an affirmative defense is set up by defendant Leggette offering the medical expense reimbursement to Moore as in mitigation of damages.
This motion by plaintiff asks that the affirmative defense be stricken as prejudicial, confusing and improper. In defense of the defense, the defendant relies primarily on the gratuitous nature of the coverage provided for her passenger’s established benefit. Since plaintiff gave no consideration for the coverage Leggette justifies the pleading in mitigation of damages here as falling beyond the limits of that defined as a collateral source payment. Plaintiff has received compensation for medical expenses at no prior or concurrent expense to herself, and therefore defendant urges that she should be precluded from possibly obtaining a double recovery. Theoretically, the defendant has paid an extra insurance premium to avoid that circumstance. More precisely, it might be said that the insurer, having added coverage of this sort in all cases and regardless of the liability of their insured, now would use the satisfaction of that much of its obligation to mitigate its additional obligation in the event their insured is found liable to this plaintiff in this action.
Eighty-five years ago the Court of Appeals held that a plaintiff might only recover as compensatory damages that which he had actually paid or would have to pay (Drinkwater v. Dinsmore, 80 N. Y. 390). Recently, this rule has been the subject of further discussion by that court reflecting the intervening changes in the nature of our society. First, benefits received by a plaintiff as a result of his own past payment of a consideration were held inadmissible in mitigation where the indemnification was the direct and intended result of that prior payment (Healy v. Rennert, 9 N Y 2d 202). Then this holding was qualified some *605 what by Coyne v. Campbell (11 N Y 2d 372), so that benefits received without evidence of tangible consideration given at any time were noncompensable. Healy was distinguished as involving a full recovery for benefits for which value was paid and received, whereas Coyne involved a valuation made of services rendered for which there was no monetary expectancy of payment by the persons whose services were nevertheless being evaluated. Finally, the Court of Appeals then held that certain pension moneys received by a widow, the fund for which decedent had contributed to, were not acceptable in mitigation of damages in a wrongful death action (Cady v. City of New York, 14 N Y 2d 660).
The entire problem of the nature of collateral source payments is of relatively recent vintage and therefore open. A complicating and apparently brand-new factor has been introduced by the Cady case. The latter action for wrongful death (Decedent Estate Law, § 130) obviously introduces a situation where the plaintiff, an estate, could not have contributed to the source of the payments made. We surely cannot say with certainty that the estate itself as such parted with consideration for the benefits received, and yet that which was received was not permitted in mitigation of damages. Decedent’s contribution might be attributed to his estate on the basis of lesser take home pay and a resultant diminished household budget, but that reasoning seems strained and unrealistic at best. The point is, the principle of consideration paid by a party as thereby avoiding mitigation is stretched beyond recognition if stated that simply at this point.
If the Coyne case is reviewed as an avoidance of the idea of an evaluation of services rendered for no real expectancy of purely economic reimbursement we can make some headway. Coyne speaks of an essentially artificial, self-serving estimate sought to be used to form at least part of a basis for compensatory damages. However, in Cady, as in Healy before it, consideration was present in some manner to establish a totally predictable and rightful expectancy of benefit. There is an important element of contractual right, as fixed by the money paid, for the measurable and securely established benefit receivable regardless of the beneficiary’s identity as payor or merely as named recipient. Furthermore, neither that received nor the right to receive it is speculative. The beneficiary subsequently seeking compensatory damages from another is not a stranger to the underlying expectancy of paid-for collateral benefits.
It is not seriously disputed that a defendant ordinarily ought not be liable to even partially compensating a plaintiff for a *606 second time in a given situation. Nor should a plaintiff have the advantage of the corollary of that rationale, and be doubly rewarded, so to speak, for a single element of damage. But in this ease the rule and the corollary collide, and a choice must be made. Initially, it must be assumed that a plaintiff does not seek damage. If the plaintiff or anyone else has spent money to protect or relieve loss incurred by the fault of another that is an indication of social progress toward contractually relieving the • lot of an injured party, and not of minimizing the responsibility of the one at fault. The theory and intent of the cases cited (supra) appears as nothing more than the providing of a working basis upon which a double recovery, practically speaking, may be permitted. It is truly difficult' to comprehend a present limitation on an 85-year old rule, bearing in mind the comparative framework of society at either end of this spectrum. Presumably, we recognize change and reflect it, rather than ignore it to preserve form as opposed to reason.
Moreover, it is preposterous to assert, for instance, the availability of medical payment coverage on an automobile liability policy and then penalize a direct beneficiary of the added coverage by decreasing the insured’s actual liability. Fault is covered by liability protection; then the policyholder and the insurer proceed to add medical expense coverage to that protection. If medical expense is, obviously, seen as an important item of damage vis-a-vis liability coverage, then insured and insurer have agreed that the former pay more for that which the latter indirectly insures against anyway. At least, that is so in this type of situation. It follows then that the insurer is taking (limited) advantage of its insured, and this reasoning would mean that the court, in finding for the defendant here, sanctions this sleight-of-hand. More to the point though, we do not assume this sort of singularly loaded approach to the greatest gain of only the insurer. Certainly no-fault and other medical expenses are covered, but in the last analysis the protection offered and paid for is not normally dependent, in the minds of at least one of the contracting parties, upon the nature of the occurrence bringing the coverage into play. These are tangential reflections at best, but they do form some basis for this court’s visualization of the problem. And there are others of similar nature. There is no indication whatsoever of rate differentials dependent upon the extent of the coverage of the indorsement. This question leads to another equitable problem: is the insurer obtaining a double benefit? In other words, apart from choosing between a plaintiff’s double recovery or an insured’s lesser total responsibility, the insurer has been paid two separate, whole sums where one *607 would do. Two distinctive forms of protection have been supplied for two fees, and yet one payment here will relieve both obligations. This possibility of double charge-single payment insurance is even more unwarranted than what this plaintiff might receive as a possible no charge-double recovery bonanza.
At any rate, a plaintiff may actually and technically be twice compensated, that much is readily apparent (Healy v. Rennert, 9 N Y 2d 202, supra). Therefore, the principle of no double recovery is subject to an exception, though not for speculative amounts received without a payment of consideration somewhere along the line (Coyne v. Campbell, 11 N Y 2d 372, supra). We cannot find as the solution to an issue of the presence or not of a collateral source payment that the party receiving the payment is the only one who shall have paid for the protection. This is a severe and unrealistic narrowing of the cases which would, of course, play havoc with the collaterally paid expenses of infants for one, and with the holding of the Court of Appeals in the Cady case (supra) specifically for another. It seems the more reasonable and intended result to include within that classified as excludable collateral source payments those expenses for which a consideration was paid and which represent actual obligations, regardless of the identify of the payor.
The motion is granted.